**No. 26-50183**

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

*Ignacio Sosnava Rodriguez,*

*Petitioner-Appellee,*

v.

Sylvester M. Ortega, in his official capacity as Director of the San Antonio Field Office of ICEs Enforcement and Removal Operations; Markwayne Mullin, Secretary, U.S. Department of Homeland Security; Pamela Bondi, U.S. Attorney General; Charlotte Collins, in her official capacity as Warden of the T. Don Hutto Detention Center; Department of Homeland Security; DOJ Executive Office For Immigration Review,

*Respondents-Appellants,*

————————

No. 26-50219

————————

*Alejandro Villegas Angel,*

*Petitioner-Appellee,*

v.

Markwayne Mullin, Secretary, U.S. Department of Homeland Security; Pamela Bondi, U.S. Attorney General; Miguel Vergara, San Antonio Field Office Director for Enforcement and Removal; Charlotte Collins, Warden, T. Don Hutto Detention Center, Taylor, Texas; United States Department of Homeland Security; United States Immigration and Customs Enforcement; Executive Office for Immigration Review, Office of the General Counsel,

*Respondents-Appellants,*

————————————

No. 26-50221

————————

*Miguel Angel Gomez Alvarado,*

*Petitioner-Appellee,*

v.

Miguel Vergara, in his official capacity as the Acting Director of San Antonio Field Office for U.S. Immigration and Customs Enforcement; Todd Lyons, in his capacity as the Acting Director for the U.S. Immigration and Customs Enforcement; Kristi Noem, in her capacity as the Secretary of the U.S. Department of Homeland Security,

*Respondents-Appellants.*

————————————

On Appeal from the United States District Court
for the Western District of Texas
No. 1:26-cv-000273

No. 1:26-cv-00309
No. 1:26-cv-00384

————————————

**RESPONDENT-APPELLANTS' OPENING BRIEF**

————————————

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant
Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney
General

BENJAMIN HAYES
Senior Counsel to the Assistant
Attorney General

SHELLEY R. GOAD
Assistant Director

LESLIE McKAY
Assistant Director
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin
Station
Washington, DC 20044
Tel: (202) 353-4424

*Counsel for the Federal Respondents*

## CERTIFICATE OF INTERESTED PERSONS

*Ignacio Sosnava Rodriguez*, No. 26-50183
*Alejandro Villegas Angel*, No. 26-50219
*Miguel Angel Gomez Alvarado*, No. 26-50221

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed non-governmental persons may have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Ignacio Sosnava Rodriguez, Plaintiff-Appellee;

Kymberly Anne Renaud, Attorney for Ignacio Sosnava Rodriguez;

Alejandro Villegas Angel, Plaintiff-Appellee;

Patricio Garza Izaguirre, Attorney for Alejandro Villegas Angel;

Miguel Angel Gomez Alvarado, Plaintiff-Appellee;

Stephen A. Lagana, Attorney for Miguel Angel Gomez Alvarado.

<div align="right">

s/ Leslie McKay
LESLIE McKAY
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
(202) 353-4424

</div>

## STATEMENT REGARDING ORAL ARGUMENT

In *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), this Court held that aliens who are "applicants for admission" under 8 U.S.C. § 1225(a)(1) and cannot show they are "clearly and beyond a doubt entitled to be admitted" are subject to mandatory detention, without bond, under § 1225(b)(2). There is no dispute that Petitioners are "applicants for admission" and have failed to show they are entitled to be admitted. The district courts below, however, held that the Due Process Clause entitles Petitioners to a bond hearing to assess whether they are a flight risk or dangerous. But because those factors are irrelevant to whether § 1225(b)(2)(A) applies, Petitioners have no procedural due process right to a bond hearing under 8 U.S.C. § 1226(a). *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003). And any substantive due process challenge to § 1225(b)(2)(A) fails under rationale basis review. *Demore v. Kim*, 538 U.S. 510 (2003).

Although the facts and law are clear, these appeals raise an important and recurring issue and Respondents believe oral argument would aid the Court in resolving this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS

STATEMENT REGARDING ORAL ARGUMENT

TABLE OF AUTHORITIES

INTRODUCTION ..................................................................................1

STATEMENT OF JURISDICTION ................................................... 4

STATEMENT OF THE ISSUE............................................................ 5

STATEMENT OF THE CASE ........................................................... 6

    I.     Statutory Framework ................................................... 6

         A.     The pre-1996 immigration laws gave preferential treatment to aliens—including bond hearings—who entered the United States unlawfully. ............................... 6

         B.     IIRIRA eliminated the preferential treatment of aliens who unlawfully entered the United States and mandated detention of "applicants for admission." .......... 7

         C.     The government applies § 1225(b)'s requirement that all "applicants for admission" be detained. ..............12

         D.     This Court held that § 1225(b)(2)(A) mandates detention of all applicants for admission. ........................13

    II.    Factual Background and Procedural History ...........................14

         A.     Petitioner Sosnava ...........................................................14

         B.     Petitioner Gomez .............................................................15

         C.     Petitioner Villegas...........................................................17

SUMMARY OF ARGUMENT .......................................................... 19

STANDARD OF REVIEW ............................................................................21

ARGUMENT ................................................................................................21

I.    Procedural due process does not entitle Petitioners to a bond
      hearing to determine facts that are irrelevant to their detention
      under § 1225(b)(2). ...........................................................................21

      A.    Petitioners' claims do not sound in procedural due
            process. ................................................................................ 22

      B.    Even if Petitioners were asserting a cognizable procedural
            due process claim, it would be meritless. ............................... 29

II.   Petitioners do not have a substantive due process right to a
      bond hearing. ..................................................................................... 32

CONCLUSION ...................................................................................... 37

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Buenrostro-Mendez v. Bondi,*
166 F.4th 494 (5th Cir. 2026) ........................................................ 1, passim

*Conn. Dep't of Pub. Safety v. Doe,*
538 U.S. 1 (2003) .........................................................................3, passim

*Demore v. Kim,*
538 U.S. 510 (2003) ......................................................................4, passim

*Department of State v. Muñoz,*
602 U.S. 899 (2024)........................................................................ 22, 33

*DHS v. Thuraissigiam,*
591 U.S. 103 (2020).......................................................................3, passim

*Duarte v. City of Lewisville, Texas,*
858 F.3d 348 (5th Cir. 2017)................................................................ 26

*Hing Sum v. Holder,*
602 F.3d 1092 (9th Cir. 2010) ......................................................... 6, 7, 8

*Jennings v. Rodriguez,*
583 U.S. 281 (2018)....................................................................... 1, passim

*Kaplan v. Tod,*
267 U.S. 228 (1925).............................................................................31

*Landon v. Plasencia,*
459 U.S. 21 (1982) ...................................................................... 6, 30, 31

*Mathews v. Eldridge,*
424 U.S. 319 (1976) ..................................................................... 15, passim

*Matter of Yajure Hurtado,*
29 I. & N. Dec. 216 (BIA 2025) ..........................................................7, 13

*Michael H. v. Gerald D.,*
  491 U.S. 110 (1989) ..................................................................... 28

*Nelson v. Colorado,*
  581 U.S. 128 (2017) ..................................................................... 28

*Nishimura Ekiu v. United States,*
  142 U.S. 651 (1892) ................................................................. 29, 31

*Pack v. Yusuff,*
  218 F.3d 448 (5th Cir. 2000) .......................................................... 21

*Reno v. Flores,*
  507 U.S. 292 (1993) ............................................................ 23, 28, 32

*Riley v. Corbett,*
  622 F. App'x 93 (3d Cir. 2015) ....................................................... 27

*Shaughnessy v. United States ex rel. Mezei,*
  345 U.S. 206 (1953) ..................................................................... 30

*Thomas v. Blocker,*
  2022 WL 2870151 (3d Cir. July 21, 2022) ........................................... 27

*Torres v. Barr,*
  976 F.3d 918 (9th Cir. 2020) ............................................................. 8

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) .................................................................. 4, 33

*Wekesa v. U.S. Attorney,*
  No. 22-10260, 2022 WL 17175818 (5th Cir. Nov. 22, 2022) ..................... 26

*Wong Wing v. United States,*
  163 U.S. 228 (1896) ..................................................................... 34

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) ................................................................. 13, 34

## STATUTES

## United States Constitution:

U.S. Const. Amend. V ........................................................... 22

## Immigration and Nationality Act of 1952, as amended:

Section 101(a)(13),
   8 U.S.C. § 1101(a)(13) (1994) ................................................ 6

Section 101(a)(13)(A),
   8 U.S.C. § 1101(a)(13)(A) ..................................................... 8

Section 212(d)(5),
   8 U.S.C. § 1182(d)(5).............................................................12

Section 212(d)(5)(A),
   8 U.S.C. § 1182(d)(5)(A) ...................................................7, 10

Section 235(a),
   8 U.S.C. § 1225(a) ................................................................. 6

Section 235(a)(1),
   8 U.S.C. § 1225(a)(1) ................................................ 1, 9, 21, 27

Section 235(b),
   8 U.S.C. § 1225(b) ................................................................12

Section 235(b)(1),
   8 U.S.C. § 1225(b)(1)............................................................. 9

Section 235(b)(1)(B)(ii),
   8 U.S.C. § 1225(b)(1)(B)(ii)................................................... 9

Section 235(b)(2),
   8 U.S.C. § 1225(b)(2) ............................................................ 2

Section 235(b)(2)(A),
   8 U.S.C. § 1225(b)(2)(A) ............................................ 1, passim

Section 235(b)(2)(B),
8 U.S.C. § 1225(b)(2)(B) .................................................................. 10

Section 235(b)(2)(C),
8 U.S.C. § 1225(b)(2)(C) .................................................................. 10

Section 236,
8 U.S.C. § 1226 ................................................................................ 10

Section 236(a),
8 U.S.C. § 1226(a) ....................................................................10, 12

Section 236(a)(1),
8 U.S.C. § 1226(a)(1) ....................................................................... 11

Section 236(a)(2),
8 U.S.C. § 1226(a)(2) ...................................................................... 11

Section 236(c)(1),
8 U.S.C. § 1226(c)(1) ....................................................................... 11

Section 236(c)(4),
8 U.S.C. § 1226(c)(4) ....................................................................... 11

Section 237,
8 U.S.C. § 1227 ...............................................................................12

Section 240,
8 U.S.C. § 1229a ......................................................................... 2, 9

Section 240A(b)(1),
8 U.S.C. § 1229b(b)(1)....................................................................17

Section 241(a),
8 U.S.C. § 1251(a) (1994) ................................................................ 6

Section 275(a),
8 U.S.C. § 1325(a) ...........................................................................31

**Other Statutes:**

28 U.S.C. § 1291 ........................................................................... 5

28 U.S.C. § 1331 ........................................................................... 4

28 U.S.C. § 2241 ..........................................................................21

28 U.S.C. § 2241 ........................................................................... 4

28 U.S.C. § 2253(a) ....................................................................... 5

Illegal Immigration Reform and Immigrant Responsibility Act,
    Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996) ...................... 8

Laken Riley Act,
    Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025) ................................ 11

# OTHER AUTHORITIES

Executive Office for Immigration Review,
    Automated Case Information System ...........................................14, 16, 17

H.R. Rep. No. 104-469, pt. 1 (1996) ........................................... 7, 8

ICE Memo: Interim Guidance Regarding Detention Authority for
    Applications for Admission (July 8, 2025) ...............................12

# REGULATIONS

8 C.F.R. § 1003.19 ........................................................................ 11

8 C.F.R. § 1236.1(d)(1) .................................................................. 11

8 C.F.R. § 236.1(c)(8) ....................................................................... 11

8 C.F.R. § 236.1(d).......................................................................... 11

8 C.F.R. § 236.1(d)(1) ..................................................................... 11

**INTRODUCTION**

The Immigration and Nationality Act, as amended, provides that all aliens who are present in the United States and not admitted—deemed by statute to be "applicants for admission"—"shall be detained" pending their removal proceedings if they are "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(a)(1), (b)(2)(A). Detention under § 1225(b)(2)(A) is mandatory, so aliens are not entitled to bond hearings. *Jennings v. Rodriguez*, 583 U.S. 281, 297, 300 (2018).

Over the last several months, thousands of habeas petitions have been filed in district courts within this Circuit by aliens who are "applicants for admission" and are being detained under § 1225(b)(2)(A) without bond hearings. Many district courts granted those petitions, holding that the aliens' detentions were governed by the separate authority in 8 U.S.C. § 1226(a), which permits bond hearings. This Court rejected the holdings of those decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), and held that "applicants for admission" are subject to mandatory detention under § 1225(b)(2)(A) and so have no statutory right to a bond hearing. *Id.* at 502-08. Despite *Buenrostro-Mendez*, district courts, including the courts below, have relied on a different theory—*procedural* due process—to order the Government to provide bond hearings

1

under § 1226(a) for aliens who are indisputably detained under § 1225(b)(2) to assess whether they are flight risks or dangerous. But this theory, too, is foreclosed.

There is no dispute, after *Buenrostro-Mendez*, that Petitioners-Appellees fall within the terms of § 1225(b)(2). Like the petitioners in *Buenrostro-Mendez*, Petitioners Ignacio Sosnava Rodriguez ("Sosnava"), Miguel Angel Gomez Alvarado ("Gomez"), and Alejandro Villegas Angel ("Villegas") are applicants for admission who failed to show that they are "clearly and beyond a doubt entitled to be admitted." Consequently, they are subject to mandatory detention under § 1225(b)(2)(A) during their removal proceedings.

No additional process is needed to resolve these uncontested issues of fact. Petitioners have never sought additional process on whether they are "applicants for admission" or "entitled to be admitted." Instead, they have only ever asserted a right to a bond hearing to assess whether they are flight risks or dangerous, but they have no procedural due process right to such a hearing. As the Supreme Court has held, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 9 (2003). And whether

2

Petitioners are a flight risk or dangerous is irrelevant to whether § 1225(b)(2)(A) applies; thus, a bond hearing to assess those issues would be "a bootless exercise." *Id.* at 7-8.

Even if Petitioners were asserting a cognizable procedural due process claim, the only process due aliens who have never "been admitted into the country pursuant to law" is whatever process is "expressly conferred by Congress." *DHS v. Thuraissigiam*, 591 U.S. 103, 138 (2020).

In truth, Petitioners are not challenging the *procedures* available under the statute, but Congress's *substantive* determination that aliens covered by § 1225(b)(2)(A) must be detained without a bond hearing under § 1226(a) to assess whether they are flight risks or dangerous. Petitioners' true claims sound in substantive due process—*i.e.*, that the government cannot constitutionally detain them without an assessment of dangerousness or flight risk notwithstanding the fact that they are subject to mandatory detention by statute. But Petitioners have not attempted to satisfy the standard for a substantive due process claim, and the district courts below never held that they did. Nor could they have done so. Petitioners do not purport to identify any fundamental right, so their substantive due process claim fails so long as mandatory detention under § 1225(b)(2)(A) is "rationally      related      to      legitimate      government      interests."

3

*Washington v. Glucksberg*, 521 U.S. 702, 728 (1997).  It plainly is.  The Supreme Court has long "recognized [that] detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process," because "deportation proceedings 'would be vain if those accused could not be held in custody pending the inquiry into their true character.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003).

In the end, Petitioners' and the district courts' attempts to sidestep *Buenrostro-Mendez* must fail.  Their putative procedural due process claims are directed at the substance of Congress' policy choice to require detention of applicants for admission under § 1225(b)(2)(A).  That theory is even more worthy of reversal than the statutory theory presented and rejected in *Buenrostro-Mendez*.

## STATEMENT OF JURISDICTION

The district courts had jurisdiction under 28 U.S.C. §§ 1331 and 2241. In appeal No. 26-50183, the district court granted Sosnava's petition for writ of habeas corpus on procedural due process grounds on February 25, 2026. ROA.26-50183.___    [*Sosnava Rodriguez    v.    Oretega,    et al.*, No. 1:26-cv-00276 (W.D. Tex.), Dkt. No. 14 ("*Sosnava* Dkt.")]. Respondents-Appellants filed their notice of appeal on March 2, 2026. ROA.26-50183.___ [*Sosnava* Dkt. No. 16].  In appeal No. 26-50221, the

4

district court granted Gomez's petition for habeas corpus petition on procedural due process grounds on March 2, 2026.  ROA.26-50221.___ [*Gomez Alvarado v. Vergara, et al.*, No. 1:26-cv-00309 (W.D. Tex.), Dkt. No. 7 ("*Gomez* Dkt.")].  Respondents-Appellants filed their notice of appeal on March 12, 2026.  ROA.26-50221.___ [*Gomez* Dkt. No. 9].  In appeal No. 26-50219, the district court granted Villegas' petition for habeas corpus petition on procedural due process grounds on March 3, 2026.  ROA.26-50219.___ [*Villegas Angel v. Noem, et al.*, No. 1:26-cv-00384 (W.D. Tex.), Dkt. No. 7 ("*Villegas* Dkt.")].  Respondents-Appellants filed their notice of appeal on March 12, 2026.  ROA.26-50219.___ [*Villegas* Dkt. No. 11].  This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

## STATEMENT OF THE ISSUE

Whether the Due Process Clause of the Fifth Amendment requires the government to provide aliens subject to the mandatory detention authority in 8 U.S.C. § 1225(b)(2)(A) with bond hearings to assess their flight risk or dangerousness.

## STATEMENT OF THE CASE

I.    **Statutory Framework**

A.    **The pre-1996 immigration laws gave preferential treatment to aliens—including bond hearings—who entered the United States unlawfully.**

Prior to 1996, the INA treated aliens differently based on whether the alien had presented at a port of entry or evaded inspection and illegally entered the United States. *Buenrostro-Mendez*, 166 F.4th at 498 (citing 8 U.S.C. §§ 1225(a), 1251(a) (1994)); *see Hing Sum v. Holder*, 602 F.3d 1092, 1099-1100 (9th Cir. 2010) (same). "Entry" referred to "any coming of an alien into the United States," 8 U.S.C. § 1101(a)(13) (1994), and whether an alien had physically entered the United States (or not) "dictated [both] what type of [removal] proceeding applied," *Hing Sum*, 602 F.3d at 1099, and whether the alien would be detained pending those proceedings, *Buenrostro-Mendez*, 166 F.4th at 498.[1]

At the time, the INA provided for "two types of proceedings in which aliens can be denied the hospitality of the United States: deportation hearings and exclusion hearings." *Landon v. Plasencia*, 459 U.S. 21, 25 (1982). An alien who arrived at a port of entry would be placed in exclusion

---

[1] Aliens who arrive at a port of entry have technically "entered" the United States physically, but under the longstanding "entry fiction" doctrine, "aliens who arrive at a port of entry . . . are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139.

proceedings and subjected to mandatory detention, with potential release solely by a grant of parole. *Buenrostro-Mendez*, 166 F.4th at 498; *see* 8 U.S.C. § 1182(d)(5)(A). In contrast, an alien who evaded inspection and entered the United States would be placed in deportation proceedings. *Buenrostro-Mendez*, 166 F.4th at 498. Aliens in deportation proceedings, unlike those in exclusion proceedings, "were entitled to request release on bond." *Buenrostro-Mendez*, 166 F.4th at 498; *see Hing Sum*, 602 F.3d at 1100.

Thus, the INA's prior framework distinguishing between aliens based on "entry" had:

> the 'unintended and undesirable consequence' of having created a statutory scheme where aliens who entered without inspection 'could take advantage of the greater procedural and substantive rights afforded in deportation proceedings,' including the right to request release on bond, while aliens who had 'actually presented themselves to authorities for inspection' . . . were subject to mandatory custody.

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 223 (BIA 2025); *see Hing Sum*, 602 F.3d at 1100 (similar); H.R. Rep. No. 104-469, pt. 1, at 225 (1996) ("House Rep.") (similar).

**B.    IIRIRA eliminated the preferential treatment of aliens who unlawfully entered the United States and mandated detention of "applicants for admission."**

Congress discarded that prior regime through enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"),

Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Among other things, IIRIRA sought to "ensure[] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc); *accord Buenrostro-Mendez*, 166 F.4th at 499 (noting that IIRIRA "aimed to reduce this incongruity" of treatment).

To that end, IIRIRA replaced the prior focus on physical "entry," instead making "admission" the touchstone of the removal process. IIRIRA defined "admission" to mean "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Now, the "pivotal factor in determining an alien's status" is "whether or not the alien has been *lawfully* admitted." House Rep., *supra*, at 225 (emphasis added); *see Hing Sum*, 602 F.3d at 1100 (similar).

IIRIRA effected these changes through several provisions codified in Section 1225 of Title 8.

**Section 1225(a):** Section 1225(a) codifies Congress's decision to make "admission," rather than physical entry, the touchstone. That provision states that an alien "present in the United States who has not been

admitted or who arrives in the United States" "shall be deemed . . . an applicant for admission":

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1).

**Section 1225(b):**  IIRIRA also provided for expedited removal and "Section 240" proceedings (under 8 U.S.C. § 1229a) and mandated that applicants for admission be detained pending those proceedings.  8 U.S.C. § 1225(b)(1)-(2).

Section 1225(b)(1) lays out a framework for the detention and removal of aliens who qualify for expedited removal proceedings.  *See Jennings*, 583 U.S. at 297 (explaining that 8 U.S.C. § 1225(b)(1)(B)(ii) "mandate[s] detention").

Section 1225(b)(2)(A) "operates as a catchall provision that applies to all applicants for admission not covered by subsection (b)(1)." *Buenrostro-Mendez*, 166 F.4th at 499 (internal quotation, alteration, and citation omitted).  That provision requires that those aliens be detained pending Section 1229a removal proceedings:

9

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a.

8 U.S.C. § 1225(b)(2)(A).[2]

While Section 1225(b) does not allow for aliens to be released on bond, the INA grants the Department of Homeland Security ("DHS") discretion to exercise its parole authority to temporarily release an applicant for admission, but "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see Buenrostro-Mendez, 166 F.4th at 499 n.3.

**Section 1226:** IIRIRA also created a separate authority addressing the arrest, detention, and release of aliens generally (not "applicants for admission" specifically). See 8 U.S.C. § 1226. The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Id. § 1226(a).

---

[2] Section 1225(b)(2)(A) does not apply to (1) aliens subject to expedited removal; (2) crewmen; or (3) stowaways. 8 U.S.C. § 1225(b)(2)(B). In addition, the Executive has discretion to return aliens arriving on land from a contiguous territory pending removal proceedings. Id. § 1225(b)(2)(C).

Detention under § 1226(a) is generally discretionary. The Attorney General "may" either "continue to detain the arrested alien" or release the alien on bond or conditional parole. *Id.* § 1226(a)(1)-(2). In practice, DHS makes an initial custody determination. 8 C.F.R. § 236.1(d)(1). The alien may then seek custody redetermination—a bond hearing—before an immigration judge and can appeal the immigration judge's custody determination to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(c)(8), (d), 1236.1(d)(1), 1003.19.

That discretion does not extend to certain aliens. *Jennings,* 583 U.S. at 288. Section 1226(c) provides that "[t]he Attorney General shall take into custody" certain aliens who are inadmissible or deportable because they (1) "committed" certain offenses; or (2) engaged in terrorism-related activities. 8 U.S.C. § 1226(c)(1). Such aliens may be released only if DHS determines "that release of the alien from custody is necessary" to protect a witness to a "major criminal activity" or a similar person, and then only if the alien "will not pose a danger" to public safety and is not a flight risk. *Id.* § 1226(c)(4). Congress recently amended § 1226(c) through the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025), to expand the categories of aliens subject to § 1226(c).

**C.  The government applies § 1225(b)(2)(A)'s requirement that all "applicants for admission" be detained pending removal proceedings.**

For many years after IIRIRA, DHS and most immigration judges treated aliens who entered the United States without admission and were later detained as being subject to discretionary detention under 8 U.S.C. § 1226(a), rather than mandatory detention under 8 U.S.C. § 1225(b). *See Buenrostro-Mendez*, 166 F.4th at 500.

On July 8, 2025, DHS "revisited its legal position on detention and release authorities" and issued interim guidance that brought the Executive's practices in line with the statute's plain text. *See* ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission (July 8, 2025), *available at* https://perma.cc/2V6H-FHVD (last accessed Mar. 13, 2026). Specifically, DHS concluded that applicants for admission "are subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by INA § 212(d)(5) [8 U.S.C. § 1182(d)(5)] parole." *Id.* As a result, the "only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under the INA § 236(a) [8 U.S.C. § 1226(a)] are aliens admitted to the United States and chargeable with deportability under INA § 237 [8 U.S.C. § 1227]." *Id.*

12

The Board also adopted this interpretation in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216.

### D.     This Court held that § 1225(b)(2)(A) mandates detention of all applicants for admission.

In *Buenrostro-Mendez*, this Court recognized that 8 U.S.C. § 1225(b) mandates detention of applicants for admission and that Section 1225(b)(2) does not "'say[] anything whatsoever about bond hearings.'" 166 F.4th at 502 (quoting *Jennings*, 583 U.S. at 297). The Court then held that aliens who are present in the United States without admission are "applicants for admission" who are "seeking admission" under § 1225(b)(2)(A) and so are subject to mandatory detention under that provision. *Id.* at 502-08. "The everyday meaning of the statute's terms," the Court continued, "confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'" *Id.* The Court explained that this interpretation was not only the best reading of the statute, but also "better honors [the] predominant goal in the enactment of IIRIRA" to "put aliens seeking admission lawfully on equal footing with those who entered without inspection." *Id.* at 508. *Buenrostro-Mendez* thus foreclosed statutory challenges by "applicants for admission" to mandatory detention under § 1225(b)(2)(A). In addition, the Court rejected the petitioners' reliance on *Zadvydas v. Davis*, 533 U.S. 678 (2001), because that case "ha[d]

13

no direct application to aliens who are detained and being given due process during removal proceedings." *Id.*

## II.    Factual Background and Procedural History

### A.    Petitioner Sosnava

Sosnava is a citizen of Mexico, who admittedly entered the United States without inspection and admission sometime in 2004. ROA.26-50183.___ [*Sosnava* Dkt. No. 8 ¶ 34].  DHS encountered Sosnava following a traffic stop on December 23, 2025, ROA.26-50183.___ [*Sosnava* Dkt. No. 8 ¶¶ 36, 38], and he is currently in removal proceedings under 8 U.S.C. § 1229a.  ROA.26-50183.___ [*Sosnava* Dkt. No. 8 ¶ 35, Dkt. No. 14 at 1].  His next hearing on the merits scheduled for April 15, 2026.  *See* Executive Office for Immigration Review, Automated Case Information System.[3]  Sosnava filed an amended petition for a writ of habeas corpus on February 13, 2026.  ROA.26-50183.___ [*Sosnava* Dkt. No. 8].  He challenged his detention on both statutory and constitutional grounds.  ROA.26-50183.___ [*Sosnava* Dkt. No. 8 ¶¶ 75-83].

On February 25, 2026, the district court granted Sosnava's habeas petition in part and ordered his immediate release from custody. ROA.26-50183.___ [*Sosnava* Dkt. No. 14 at 7-8].  The district court

_____

[3] https://acis.eoir.justice.gov/en/caseInformation (last accessed Mar. 4, 2026).

recognized this Court's decision in *Buenrostro-Mendez* but concluded that it did not prevent consideration of Sosnava's "independent claim for release under the Due Process Clause." ROA.26-50183.___ [*Sosnava* Dkt. No. 14 at 3 & n.2].    The district court rejected Respondents' reliance on *Thuraissigiam*, 591 U.S. 103, and went on to conclude, under the three-factor test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), that "all three factors favor[ed Sosnava]" and that his "detention without any opportunity to challenge his detention through a bond hearing violates the Due Process Clause." ROA.26-50183.___ [*Sosnava* Dkt. No. 14 at 4-5].

Sosnava was released from DHS custody on February 27, 2026. ROA.26-50183.___ [*Sosnava* Dkt. No. 15].

## B.   Petitioner Gomez

Gomez is a native and citizen of Honduras who admittedly entered the United States without inspection and admission in May 2012. ROA.26-50221.___ [*Gomez* Dkt. No. 1 ¶ 2]. He was encountered by DHS in November 2025 following a traffic stop, taken into custody, and placed into removal proceedings under 8 U.S.C. § 1229a. ROA.26-50221.___ [*Gomez* Dkt. Nos. 5-1 & 5-2].    An Immigration Judge denied Gomez's application for cancellation of removal for non-permanent residents on February 23, 2026; his appeal to the Board of Immigration Appeals is

15

currently pending. *See* Executive Office for Immigration Review, Automated Case Information System.4

On February 6, 2026, Gomez filed a petition for a writ of habeas corpus in which he asserted, in relevant part, that his mandatory detention without access to a bond hearing violated his due process rights as well as being contrary to the controlling statute. ROA.26-50221.__ [*Gomez* Dkt. No. 1 ¶¶ 18-28]. On March 2, 2026, the district court granted Gomez's habeas petition in part on procedural due process grounds and ordered Respondents to release him from custody. ROA.26-50221.__ [*Gomez* Dkt. No. 7 at 15]. The court acknowledged this Court's decision in *Buenrostro-Mendez* but found that the "decision was limited only to that petitioner's statutory interpretation arguments and did not reach any issue of whether a petitioner's detention violated the Fifth Amendment." ROA.26-50221.__ [*Gomez* Dkt. No. 7 at 4-5 n.2]. Moreover, the court refused to apply the holding of *Connecticut Department of Public Safety*, 538 U.S. 1, because the case "arose in an entirely different context." ROA.26-50221.__ [*Gomez* Dkt. No. 7 at 8]. Accordingly, the court applied the three-factor test from *Mathews*, 424 U.S. 319, and held that Gomez was

---

4 https://acis.eoir.justice.gov/en/caseInformation
(last accessed Mar. 12, 2026).

entitled to a bond hearing as a matter of procedural due process. ROA.26-50221.___ [*Gomez* Dkt. No. 7 at 7-8, 11-12].

Gomez was released from DHS custody on March 2, 2026. ROA.26-50221.___ [*Gomez* Dkt. Nos. 8 & 8-1).

## C.   Petitioner Villegas

Villegas is a native and citizen of Mexico who admittedly entered the United States without inspection and admission in March 2011. ROA.26-50219.___ [*Villegas* Dkt. No. 1 ¶ 17]. He came to the attention of DHS in February 2026 following a traffic stop. ROA.26-50219.___ [*Villegas* Dkt. No. 1 ¶ 21]. DHS took Villegas into custody and commenced removal proceedings against him under 8 U.S.C. § 1229a. ROA.26-50219.___ [*Villegas* Dkt. No. 5-1]. Villegas intends to seek relief from removal in the form of cancellation of removal for non-permanent residents. ROA.26-50219.___ [*Villegas* Dkt. No. 1 ¶ 20]; *see* 8 U.S.C. § 1229b(b)(1). His next master calendar hearing is scheduled for May 18, 2028. *See* Executive Office for Immigration Review, Automated Case Information System.[5]

---

[5] https://acis.eoir.justice.gov/en/caseInformation
(last accessed Mar. 12, 2026).

On February 18, 2026, Villegas filed a petition for a writ of habeas corpus. ROA.26-50219.___ [*Villegas* Dkt. No. 1]. There, he conceded that he "has no statutory right to a bond hearing under § 1226(a) due to *Buenrostro*[-*Mendez*], but maintain[ed] that his continued detention without any individualized custody determination violate[d] the Constitution[.]" ROA.26-50219.___ [*Villegas* Dkt. No. 1 ¶ 24].

On March 3, 2026, the district court granted Villegas' petition in part on procedural due process grounds and ordered Respondents to release him from custody. ROA.26-50219.___ [*Villegas* Dkt. No. 7 at 15]. In its order, which is substantively identical to the order issued to Gomez, the district court acknowledged this Court's decision in *Buenrostro-Mendez* but found that the "decision was limited only to that petitioner's statutory interpretation arguments and did not reach any issue of whether a petitioner's detention violated the Fifth Amendment." ROA.26-50219.___ [*Villegas* Dkt. No. 7 at 4-5 n.2]. Moreover, the court refused to apply the holding of *Connecticut Department of Public Safety*, 538 U.S. 1, because the case "arose in an entirely different context." ROA.26-50219.___ [*Villegas* Dkt. No. 7 at 9]. Accordingly, the court applied the three-factor test from *Mathews*, 424 U.S. 319. ROA.26-50219.___ [*Villegas* Dkt. No. 7 at 5-7, 11-13].

Villegas was released from DHS custody on March 3, 2026. ROA.26-50219.__ [*Villegas* Dkt. Nos. 10 & 10-1).

## SUMMARY OF ARGUMENT

Petitioners argue that they may not be detained unless given a bond hearing to assess whether they are a flight risk or dangerous. This Court in *Buenrostro-Mendez*, 166 F.4th 494 (5th Cir. 2026), rejected Petitioners' statutory claim for that relief. The district courts below, however, held that procedural due process entitles them to the same relief. This, too, was error and the Court should reverse.

I.    Petitioners do not assert a cognizable *procedural* due process claim. Section 1225(b)(2)(A) mandates detention of "applicants for admission" who have not shown they are "clearly and beyond a doubt entitled to be admitted." Petitioners do not dispute that they fall within the statute. Instead, they argue that they are entitled to a bond hearing to assess whether they are flight risks or dangerous—criteria that are irrelevant under the terms of § 1225(b)(2)(A).

That is not a cognizable claim of procedural due process. An alien "who asserts a right to a hearing under the Due Process clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Conn. Dep't of Pub. Safety*, 538 U.S. at 8. An alien's flight risk or

19

dangerousness are irrelevant to the application of § 1225(b)(2)(A), and so a hearing on those issues would be a "bootless exercise." *Id.* Petitioners are not asserting cognizable *procedural* due process claims.

Even if it were otherwise, any procedural due process claim would be meritless. Under longstanding precedent, for aliens who have never "been admitted into the country pursuant to law, the decisions of executive and administrative officers, acting within the powers expressly conferred by Congress, are due process of law." *Thuraissigiam*, 591 U.S. at 138. Petitioners have received all the process they are entitled to under the statute; the due process clause requires nothing more.

**II.**    Ultimately, Petitioners are not challenging the procedures used to determine they are subject to the detention mandate of § 1225(b)(2)(A); instead, they are challenging Congress's substantive decision to mandate detention pending removal proceedings, without regard to an alien's flight risk or dangerousness. That *substantive* due process claim also is meritless. Congress's decision to mandate detention pending removal proceedings does not implicate any fundamental rights, and it easily satisfies rational basis review. The Supreme Court has long "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process," because "deportation proceedings 'would be vain if those accused

20

could not be held in custody pending the inquiry into their true character.'"

*Demore*, 538 U.S. at 523.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant or denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Buenrostro-Mendez*, 166 F.4th at 502; *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000).

## ARGUMENT

**I.  Procedural due process does not entitle Petitioners to a bond hearing to determine facts that are irrelevant to their detention under § 1225(b)(2)(A).**

There is no dispute that all three Petitioners here fall within the scope of § 1225(b)(2)(A)'s mandatory detention provisions.  To begin, Petitioners are all "alien[s]" who are "present in the United States" and "ha[ve] not been admitted," and so are "applicants for admission."  8 U.S.C. § 1225(a)(1). Moreover, Petitioners—all of whom concede that they entered the United States without inspection and admission and were present unlawfully at the time of their apprehension—are not "clearly and beyond a doubt entitled to be admitted."  *Id.* § 1225(b)(2)(A); *see* ROA.26-50183.___ [*Sosnava* Dkt. No. 8 ¶ 34], ROA.26-50221.___ [Gomez Dkt. No. 1 ¶ 2], ROA.26-50219.___ [*Villegas* Dkt. No. 1 ¶ 17].    Therefore,  as  this  Court  held  in

21

*Buenrostro-Mendez*, they "shall be detained" under § 1225(b)(2)(A) during the pendency of their removal proceedings.

Nonetheless, despite acknowledging that Petitioners are subject to mandatory detention under § 1225(b)(2)(A), the district courts held that Petitioners are each entitled to release from DHS custody as a matter of procedural due process. ROA.26-50183.___ [*Sosnava* Dkt. No. 14 at 7-8], ROA.26-50221.___ [*Gomez* Dkt. No. 7 at 15], ROA.26-50219.___ [*Villegas* Dkt. No. 7 at 15]. That was error. Petitioners' challenges do not sound in procedural due process at all. Even if they did, they are meritless.

## A. Petitioners' claims do not sound in procedural due process.

The Constitution prohibits the government from "depriv[ing]" a "person" of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. The Supreme Court has recognized two types of due-process claims. *See Department of State v. Muñoz*, 602 U.S. 899, 910 (2024). A procedural due process claim takes as given the substantive determinations that would justify a deprivation of life, liberty, or property, but challenges the "adequacy of the[] procedures" for making those determinations. *Mathews*, 424 U.S. at 335. For example, the statute in *Mathews* made the availability of disability benefits turn on whether a person is "completely disabled" within the meaning of the statute. *Id.* at 323, 336. The procedural due

process claim did not challenge the statute's substantive criteria for who may receive benefits, but the adequacy of the procedures available to test whether a person fits within the criteria. *Id.* at 325-26. By contrast, a substantive due process claim challenges the substance of the determinations themselves, arguing that they are inadequate to justify the deprivation "*at all*, no matter what process is provided." *Reno v. Flores*, 507 U.S. 292, 302 (1993).

1.      Petitioners have not challenged the process for determining whether an alien is an "applicant for admission" as a factual matter, or whether an alien is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Instead, the district courts held that a determination that Petitioners fall within the statutory criteria is a constitutionally insufficient basis on which to justify the deprivation of their liberty (*i.e.*, detention), absent an assessment of whether the alien poses a flight risk or danger to the community. ROA.26-50183.___ [*Sosnava* Dkt. No. 14 at 5, 7], ROA.26-50221.___ [*Gomez* Dkt. No. 7 at 14-15], ROA.26-50219.___ [*Villegas* Dkt. No. 7 at 14-16]. Those criteria, however, are irrelevant under the terms of § 1225(b)(2)(A). The district courts' due process theory (and Petitioners' claims) thus does not take § 1225(b)(2)(A)'s substantive determinations as a given but challenges the lawfulness of those determinations. That is a substantive, not procedural, due process challenge.

To be sure, the courts below held that due process requires additional procedures in the form of a bond hearing. ROA.26-50183.___ [*Sosnava* Dkt. No. 14 at 5, 7], ROA.26-50221.___ [*Gomez* Dkt. No. 7 at 14-15], ROA.26-50219.___ [*Villegas* Dkt. No. 7 at 14-16]. But a bond hearing is merely the vehicle for making the *substantive* determination about flight risk or dangerousness that the district courts believed to be necessary to justify Petitioners' detention, even though those factors are irrelevant under § 1225(b)(2)(A). Because § 1225(b)(2)(A) does not require such determinations, however, Petitioners' claim is a substantive due process challenge, not a procedural one.

Put differently, Congress decided as a substantive policy matter to impose mandatory detention on all applicants for admission, like Petitioners. Whether those aliens are flight risks or dangerous is irrelevant under that policy choice. And due process does not require procedures to adjudicate immaterial facts. Thus, what Petitioners are actually attempting is to override Congress's substantive judgment under § 1225(b)(2)(A) that all applicants for admission must be detained. Procedural due process can do no such thing.

2.    The Supreme Court's decision in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), is definitive on this point. The

24

statute in that case required sex offenders to register with the state so their information could be published on a sex-offender registry. *Id.* at 4-5. John Doe, who had previously been convicted of a sex offense, claimed that the statute violated his procedural due process rights by requiring him to register without a "hearing to determine whether" he was "currently dangerous." *Id.* at 4 (citation omitted).

The Court rejected Doe's claim. It explained that "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme," and "the fact that [Doe] seeks to prove—that he is not currently dangerous—[wa]s of no consequence under" the relevant statute, which required him to register based on his prior conviction alone. *Id.* at 7. So "[u]nless [Doe] c[ould] show that that *substantive* rule of law [wa]s defective (by conflicting with the Constitution), any hearing on current dangerousness [would be] a bootless exercise." *Id.* at 8.

The rule of *Connecticut Department of Public Safety* is simple and straightforward: "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." 538 U.S. at 9. A claim that a plaintiff is entitled to a hearing to adjudicate facts a legislature had

25

not made relevant "'must ultimately be analyzed' in terms of substantive, not procedural, due process." *Id.* at 7-8.

This Court applied that rule in *Duarte v. City of Lewisville, Texas*, 858 F.3d 348 (5th Cir. 2017), in a similar context. *See id.* ("[P]rocedural due process does not entitle the Duarte Family to a hearing to 'establish a fact that is not material' under the Ordinance." (quoting *Conn. Dep't of Pub. Safety*, 538 U.S. at 7)). And it later applied that same rationale to reject a procedural due process challenge against mandatory detention under § 1226(c) in *Wekesa v. U.S. Attorney*, No. 22-10260, 2022 WL 17175818 (5th Cir. Nov. 22, 2022). There, Wekesa filed a habeas petition, alleging that "his continued detention without an individualized bond hearing violate[d] his due process rights." *Id.* at *1. The Court rejected that claim. It explained that § 1226(c) "mandates detention of any alien falling within its scope" and allows release "'only if' the alien is released for witness-protection purposes." *Id.* And "[b]ecause Wekesa d[id] not meet the statutory requirements for release under Section 1226(c)(2)," this Court affirmed the district court's denial of his habeas petition. *Id.* In other words, because Wekesa indisputably was subject to mandatory detention under § 1226(c), nothing he hoped to ascertain

26

through a bond hearing would be "relevant under the statutory scheme."

*Conn. Dep't of Pub. Safety*, 538 U.S. at 9.[6]

3.    Accordingly, Petitioners have no procedural due process right to a bond hearing on whether they are flight risks or dangerous. Individualized findings about flight risk and danger are irrelevant under the terms of § 1225(b)(2)(A), which subject Petitioners to mandatory detention based on their uncontested status as "applicants for admission" who are not "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(a)(1), (b)(2)(A).

Here, there is no dispute that Petitioners fall within the terms of the statute as interpreted by *Buenrostro-Mendez.* Indeed, the district courts below expressly recognized that *Buenrostro-Mendez* controlled the outcome of Petitioners' challenges to DHS's statutory detention authority under § 1225(b)(2)(A).    ROA.26-50183.___    [*Sosnava* Dkt. No. 14 at 3

---

[6]  *See also Thomas v. Blocker*, 2022 WL 2870151, at *5 (3d Cir. July 21, 2022) (finding that "the language in [*Connecticut Department of Public Safety v.*] *Doe* is broad, and on its face, plainly holds a due process claim will fail where . . . the 'law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest.'"  *Id.* at *5 (quoting *Conn. Dep't of Pub. Safety*, 538 U.S. at 7); *Riley v. Corbett*, 622 F. App'x 93, 95-96 (3d Cir. 2015) ("a further hearing (with the related procedural protections he requested) is not required" because there was no dispute over the only facts relevant to the registration statute).

& n.2], ROA.26-50221.___ [*Gomez* Dkt. No. 7 at 4-5 & n.2], ROA.26-50219.___ [*Villegas* Dkt. No. 7 at 4-5 & n.2]. Therefore, as in *Connecticut Department of Public Safety*, any claim that Petitioners are entitled to a bond hearing "'must ultimately be analyzed' in terms of substantive, not procedural, due process." 538 U.S. at 7-8; *see Flores*, 507 U.S. at 308 (holding that a challenge to a regulation on the ground that it failed to require a determination of a detainee's "interests" was "just [a] 'substantive due process' argument recast in 'procedural due process' terms"); *Michael H. v. Gerald D.*, 491 U.S. 110, 119, 121 (1989) (plurality opinion) (treating a request for an "evidentiary hearing" on an issue that the statutory scheme deemed "*irrelevant*" as a "substantive due process" claim).

It follows that the district courts' reliance on *Mathews* to evaluate Petitioners' claims was erroneous. ROA.26-50183.___ [*Sosnava* Dkt. No. 14 at 4-5], ROA.26-50221.___ [*Gomez* Dkt. No. 7 at 10-13], ROA.26-50219.___ [*Villegas* Dkt. No. 7 at 11-13]. *Mathews* articulates a three-part balancing test for analyzing certain "procedural due process" claims. *Nelson v. Colorado*, 581 U.S. 128, 134 (2017). But that test has no application in the realm of substantive due process. Again, *Mathews* takes the "nature of the relevant inquiry" as given, 424 U.S. at 343, and asks only

whether the "procedures" for conducting that factual inquiry are adequate, *id.* at 335. Here, in stark contrast, Petitioners contend that the Constitution requires a different factual inquiry altogether—*i.e.*, one that evaluates factors that Congress chose not to make relevant to the detention issue. Because that is a substantive, rather than procedural, due process challenge, the district court erred in applying *Mathews* as the governing test.

### B. Even if Petitioners were asserting a cognizable procedural due process claim, it would be meritless.

Even if Petitioners were asserting procedural due process claims, those claims contradict the Supreme Court's longstanding precedent regarding the due process rights of aliens who were never admitted to this country. For more than a century, the rule has been that for aliens who have never "been admitted into the country pursuant to law, the decisions of executive and administrative officers, acting within the powers expressly conferred by Congress, are due process of law." *Thuraissigiam*, 591 U.S. at 138 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)).[7] This is true even of aliens "paroled elsewhere in the country

---

[7] Although Thuraissigiam "was apprehended within 25 yards" of the border, the Supreme Court's reasoning in that case was not so limited. Rather, the Court emphasized the broader principle that "[a]n alien who tries to enter the country illegally is treated as an 'applicant for admission," and "aliens who arrive at ports of entry—even those paroled elsewhere in the country for

29

for years pending removal" who have developed significant ties to the country. *Id.* at 139 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). They are "'treated' for due process purposes 'as if stopped at the border.'" *Id.* This includes those who successfully evade inspection at the border: "[A]n alien who tries to enter the country illegally is treated as an 'applicant for admission'"—*i.e.*, treated the same as if they lawfully presented themselves at a port of entry or were caught at the border. *Id.* at 140.

The Supreme Court has elsewhere made clear that admission—not physical entry—is the touchstone for when aliens gain due process interests that could potentially require procedures beyond what Congress has provided. For example, in *Landon*, 459 U.S. 21, the Court observed that only "*once an alien gains admission* to our country and begins to develop the ties that go with permanent residence [does] his constitutional status change[]." *Id.* at 32 (emphasis added). "Th[is] rule," the Court explained, "rests on [the] fundamental proposition" that "the power to admit or exclude aliens is a sovereign prerogative," and "the Constitution gives the political department of the government plenary authority to

_____

years pending removal—are 'treated' for due process purposes 'as if stopped at the border[.]'" 591 U.S. at 139-40.

30

decide which aliens to admit." *Id.* at 32; *see also Nishimura Ekiu*, 142 U.S. at 659.

That is consistent with *Kaplan v. Tod*, 267 U.S. 228 (1925), decided years before, where the Supreme Court held that a child paroled into the care of relatives for nearly nine years—but never admitted—must be "regarded as stopped at the boundary line" and "had gained no foothold in the United States." *Id.* at 230-31. That was so even though the child had been living in the interior of the country with her naturalized-citizen father and thus was presumably forming connections to the United States. *Id.* at 229.

The same result should follow here. Petitioners' entries into the United States constituted criminal acts, *see* 8 U.S.C. § 1325(a); they have never had any lawful status in this country following their illegal entries. ROA.26-50183.___ [*Sosnava* Dkt. No. 8 ¶ 34], ROA.26-50221.___ [Gomez Dkt. No. 1 ¶ 2], ROA.26-50219.___ [*Villegas* Dkt. No. 1 ¶ 17]. On these facts, following the district courts' due process rationale would constitutionalize the same perverse dynamic that this Court rejected as a statutory matter in *Buenrostro-Mendez*. As the Court recognized, by enacting § 1225, Congress sought to eliminate the preferential treatment of aliens who violate the country's immigration laws by entering illegally

31

and evading detection. *Buenrostro-Mendez*, 166 F.4th at 499 & n.2; *see also supra*, p. 13. Under the district courts' rationale, aliens who violate federal law would enjoy greater constitutional protections with respect to their removal proceedings than those who comply with it. Nothing in law or basic fairness allows aliens to accrue additional due process rights simply by virtue of entering the United States contrary to law and successfully evading enforcement for some length of time.

Ultimately, the district courts' theory of procedural due process is incompatible with all of this longstanding precedent. Petitioners received (and are receiving) all the process due to them under the statute; that is "due process of law." *Thuraissigiam*, 591 U.S. at 138.

## II.  Petitioners do not have a substantive due process right to a bond hearing.

The district courts' holdings cannot be affirmed as a matter of substantive due process either. In contrast to a procedural due process claim, which takes as a given the substantive determinations that would justify a deprivation of life, liberty, or property, a substantive due process claim challenges the substance of the determinations themselves, arguing that they are inadequate to justify the deprivation "at all, no matter what process is provided." *Flores*, 507 U.S. at 302.

**A.** Petitioners' detention without a bond hearing during the pendency of their removal proceedings does not implicate any fundamental rights. "[P]rior to 1907 there was no provision permitting bail for *any* aliens during the pendency of their deportation proceedings," *Demore*, 538 U.S. at 523 n.7, so such a right cannot possibly be "'objectively, deeply rooted in this Nation's history and tradition.'" *Muñoz*, 602 U.S. at 910 (quoting *Glucksberg*, 521 U.S. at 720-21). Accordingly, rational-basis review is the appropriate standard for analyzing Petitioners' substantive due-process claims. *Glucksberg*, 521 U.S. at 728. Under that standard, detention under § 1225(b)(2)(A) is constitutionally permissible as long as it is "rationally related to legitimate government interests." *Id.*

Section 1225(b)(2)(A) easily clears the rational basis bar. In *Demore*, the Supreme Court considered a "substantive due process" challenge to detention under § 1226(c). 538 U.S. at 515. Like Petitioners here, the petitioner in *Demore* "argued that his detention under § 1226(c) violated due process because the [government] had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The Court rejected that claim. It explained that its cases had long "recognized detention during deportation proceedings as a constitutionally

33

valid aspect of the deportation process," because "deportation proceedings 'would be vain if those accused could not be held in custody pending the inquiry into their true character.'" *Id.* at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)); *see also id.* at 526 (reiterating the "Court's longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings"). Therefore, because "[d]etention during removal proceedings is a constitutionally permissible part of that process," the Court held that the aliens substantive due process "claim must fail." *Id.* at 531.

In reaching its holding, *Demore* distinguished the Court's prior decision in *Zadvydas*, 533 U.S. at 693, which addressed the constitutionality of indefinite detention after a final order of removal under a different provision of the INA. *Id.* at 682, 690, 692. First, the aliens challenging their detention in *Zadvydas* were aliens for whom removal was "no longer practically attainable." *Id.* at 690. Under the circumstances, the Court explained, "the detention . . . did not serve its purported immigration purpose." *Id.* at 690. By contrast, § 1226(c) applies to aliens "pending their removal proceedings," and so "necessarily serves the purpose of preventing" those aliens "from fleeing prior to or during their removal proceedings, thus increasing the chance that, if

ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 528. As *Demore* noted, Congress "had before it evidence suggesting that permitting discretionary release of aliens pending their removal hearings" would result in "large numbers" of aliens "skipping their hearings and remaining at large in the United States unlawfully." *Id.* at 528.

Second, and in the same vein, *Demore* emphasized that "the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,'" whereas detention under § 1226(c) pending removal proceedings "is of a much shorter duration" and "ha[s] a definite termination point." *Demore*, 538 U.S. at 530.

**B.** The same reasons for upholding mandatory detention under § 1226(c) apply to § 1225(b)(2)(A). Petitioners do not allege that their ultimate removal is "unattainable," so detention under § 1225(b)(2)(A) serves the same legitimate interest recognized by *Demore*—preventing aliens "from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." 538 U.S. at 528. As *Buenrostro-Mendez* recognized, "the Department of Justice Inspector General found in 1997 that 'when aliens are released from custody, nearly 90 percent abscond

35

and are not removed from the United States," and "[t]hat situation exists today at a much larger scale." 166 F.4th at 508 (quoting 62 Fed Reg. 10312, 10323 (Mar. 6, 1997)).

Nor is detention under § 1225(b)(2)(A) "indefinite" or "permanent." *Demore*, 538 U.S. at 530. As with § 1226(c), detention under § 1225(b)(2)(A) lasts only for the duration of "a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A); *see Jennings*, 583 U.S. at 297 ("Once [removal] proceedings end, detention under § 1225(b) must end as well."). In short, removal remains a practically-attainable goal, and while the proceedings remain pending, each Petitioner's detention under § 1225(b)(2)(A) bears a reasonable relation to the legitimate purposes that this Court identified in *Demore*. Section 1225(b)(2)(A) is therefore constitutional as applied to Petitioners.

## CONCLUSION

The Court should reverse the district courts' orders granting Petitioners writs of habeas corpus.

Respectfully submitted,

BRETT A. SHUMATE
  Assistant Attorney General

YAAKOV M. ROTH
  Principal Deputy Assistant
    Attorney General

DREW C. ENSIGN
  Deputy Assistant Attorney
    General

BENJAMIN HAYES
  Senior Counsel to the Assistant
    Attorney General

SHELLEY R. GOAD
Assistant Director

 *s/ Leslie McKay*
LESLIE McKAY
Assistant Director
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
TEL: (202) 353-4424

*Counsel for the Federal
Respondents-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate ACMS system on March 24, 2026.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

<div style="margin-left:40%">

*s/ Leslie McKay*
LESLIE McKAY
Assistant Director
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
(202) 353-4424

</div>

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of <u>Fed. R. App. P. 27(d)(2)(A)</u> because:

The brief contains 7435 words, excluding the parts of the brief exempted by <u>Fed. R. App. P. 32(a)(7)(B)(iii)</u>.

2.     This brief complies with the typeface and typestyle requirements of <u>Fed. R. App. P. 32(g)(1)</u> because:

The brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Georgia fourteen-point.

<u>s/ *Leslie McKay*</u>
LESLIE McKAY
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice,
Civil Division
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
(202) 353-4424